UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
VIVIAN RIVERA-ZAYAS, as Administrator
of the Estate of ANA MARTINEZ, Deceased,

                     *Plaintiff,*

             *-against-*

OUR LADY OF CONSOLATION GERIATRIC CARE
CENTER, OUR LADY OF CONSOLATION GERIATRIC
CARE CENTER d/b/a OUR LADY OF CONSOLATION
NURSING AND REHABILITATIVE CARE CENTER, and
OUR LADY OF CONSOLATION NURSING AND
REHABILITATIVE CARE CENTER,

                    *Defendants.*
------------------------------------------------------------------------X

Docket No:
2:20-cv-05153-NGG-JMW


**REPLY MEMORANDUM OF LAW SUBMITTED BY DEFENDANTS**
**IN FURTHER SUPPORT OF MOTION TO DISMISS**

Megan A. Lawless, Esq. (ML 3227)
Dylan Braverman, Esq. (DB 5501)
Charles Faillace, Esq. (CF 4001)
VIGORITO, BARKER, PATTERSON,
NICHOLS & PORTER, LLP
*Attorneys for Defendants*
300 Garden City Plaza, Suite 308
Garden City, New York 11530
(516) 282-3355

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...........................................................................................ii-vii

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT ...........................................................................................................................2

     I.     THE PREP ACT BARS PLAINTIFF'S CLAIMS .................................2

          *The Complaint Alleges a Claim Under the PREP Act* ......................2

     II.    THE EDTPA BARS PLAINTIFF'S CLAIMS .....................................7

          *A.  The Repeal of the EDTPA Is Not Retroactive* ...................................7

          *B.  The EDTPA Applies to Plaintiff's Claims* ..........................................12

          *C.  Plaintiff's Claims May Not Be Predicated on Pre-COVID*
              *Conduct* ..................................................................................................14

          *D.  Plaintiff's Allegations of Gross Negligence Do Not Preclude*
              *Dismissal* ...............................................................................................16

CONCLUSION.....................................................................................................................17

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*9CFCU Cmty. Credit Union v. Hayward*,
552 F.3d 253, 262 (2d Cir. 2009)..................................................................................11

*Amadsau v. Bronx Lebanon Hosp. Ctr.*, No. 03 CIV.6450 LAK AJP,
2005 WL 121746 (S.D.N.Y. Jan. 21, 2005). .................................................................16

*Aviation Fin. Co. v. Chaput*,
No. 14 CIV. 8313 (CM), 2015 WL 13203653 (S.D.N.Y. Mar. 12, 2015) ....................5

*Barrell v. Glen Oaks Vill. Owners, Inc.*,
29 A.D.3d 612(2nd Dept. 2006)...................................................................................15

*Bonded Waterproofing Servs., Inc. v. Anderson-Bernard Agency, Inc.*,
86 A.D.3d 527 (2nd Dept. 2011)...................................................................................15

*City Store Gates Mfg. Corp. v. Empire Rolling Steel Gates Corp.*,
113 A.D.3d 718 (2nd Dept. 2014)..................................................................................15

*Colnaghi, USA. v. Jewelers Protection Servs., Ltd.*,
81 N.Y.2d 821, 823–24 (1993) .....................................................................................16

*Dalziel v. Rosenfeld*,
265 N.Y. 76 (1934) ..........................................................................................................8

*Dupervil v. Alliance Health Operations, LCC*,  No. 20CV4042PKCPK,
2021 WL 355137, at *9 (E.D.N.Y. Feb. 2, 2021)............................................................7

*Estiverne v Esernio-Jenssen*,
910 F Supp.2d 434, 445 (E.D.N.Y. 2012) .....................................................................16

*Garcia v. New York City Health & Hosps. Corp.*,
No. 20 CIV. 9970 (CM), 2021 WL 1317178 (S.D.N.Y. Apr. 8, 2021).........................7

*Gilbert Garcia, et al. v. Welltower OpCo Group LLC, et al.*,
8:20-cv-02250-JVS-KESx (C.D.Cal. Jan. 29, 2021). .....................................................4

*In re Delmar Box Co.*, 309 N.Y. 60 (1955) ................................................................11

*In re Morse*, 247 N.Y. 290(1928). .............................................................................11

*In re WTC Disaster Site*,
414 F.3d 352 (2d Cir. 2005) ......................................................................................4, 6

*Jacobus v. Colgate*,
217 N.Y. 235 (1916) ................................................................................9, 11

*Kronos, Inc. v. AVX Corp.*,
81 N.Y.2d 90 (1993). ....................................................................................14

*Kuryak v. Adamczyk*,
265 A.D.2d 796 (4th Dept. 1999) ...................................................................8

*LaBello v. Albany Med. Ctr. Hosp.*,
85 N.Y.2d 701 (1995) ...................................................................................15

*Landgraf v. USI Film Prod.*,
511 U.S. 244 (1994) ........................................................................................8

*Mancuso v. Rubin*,
52 A.D.3d 580 (2nd Dept. 2008) ...................................................................16

*McKechnie v. Ortiz*,
132 A.D.2d 472 (1st Dept. 1987), *aff'd*, 72 N.Y.2d 969 (1988) ....................11

*Morales v. Gross*,
230 A.D.2d 7 (2nd Dept. 1997) ........................................................................7

*Moynihan v. New York State Employees' Ret. Sys.*,
192 A.D.2d 913 (3rd Dept. 1993) .....................................................................7

*Mulligan v. Murphy*,
14 N.Y.2d 223 (1964) ......................................................................................8

*Rachal v. Natchitoches Nursing & Rehabilitation Center LLC, et al.*,
No. 1:21-CV-00334 (W.D. La. Apr. 30, 2021) ...........................................5-7

*Schrader v. Carney*,
180 A.D.2d 200, 207 (4th Dept. 1992) ..........................................................11

*Shapnik v. The Hebrew Home for the Aged at Riverdale*,
No. 20-CV-6774 (LJL), 2021 WL 1614818 (S.D.N.Y. Apr. 26, 2021) .........7

*Sutton Park Dev. Corp. Trading Co. Inc. v. Guerin & Guerin Agency Inc.*,
297 A.D.2d 430 (3rd Dept. 2002) ...................................................................16

*Weiler v. Dry Dock Sav. Inst.*,
258 A.D. 581 (1st Dept. 1940), *aff'd* 284 N.Y. 630 (1940) ............................8

**Statutes**

42 U.S.C.A. § 247d-6d(a)(1) .................................................................2, 4, 7

42 U.S.C.A. § 247d-6d(c)(d)(e) ...............................................................17

42 U.S.C.A. § 247d-6d(d)..........................................................................6

Declaration Under the Public Readiness and
Emergency Preparedness Act for Medical Countermeasures
Against COVID-19, 85 FR 15198-01 (March 10, 2020)................................3-4

N.Y. Pub. Health Law § 3080 (McKinney).................................................12

N.Y. Pub. Health Law § 3081(5) (McKinney) .........................................1, 12

N.Y. Pub. Health Law § 3082(1) (McKinney) .........................................1, 12

Pub. L. No. 107-42, 115 Stat. 230 (2001) (codified at 49 U.S.C. § 40101) ...................6

https://www.nysenate.gov/legislation/bills/2021/s5177 ..................................7

**Other Authorities**

https://www.hhs.gov/sites/default/files/prep-act-advisory-opinion-hhs-ogc.pdf.............2

https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-
documents/2101081078-jo-advisory-opinion-prep-act-complete-
preemption-01-08-2021-final-hhs-web.pdf .................................................4-5

https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-
documents/AO%204.2_Updated_FINAL_SIGNED_10.23.20.pdf..............................4-5

https://www.fda.gov/medical-devices/coronavirus-disease-2019-covid-19-emergency-use-
authorizations-medical-devices/personal-protective-equipment-euas ............................2

https://www.fda.gov/media/136289/download;
https://www.fda.gov/media/136118/download..........................................................2

Black's Law Dictionary 1158 (5th ed. 1979) .................................................5

https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO_202.pdf.......12

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(1)...........................................................................................1

Fed. R. Civ. P. 12(b)(6)...........................................................................................1

Defendants OUR LADY OF CONSOLATION GERIATRIC CARE CENTER, OUR LADY OF CONSOLATION GERIATRIC CARE CENTER d/b/a OUR LADY OF CONSOLATION NURSING AND REHABILITATIVE CARE CENTER and OUR LADY OF CONSOLATION NURSING AND REHABILITATIVE CARE CENTER (collectively "OLOC") respectfully submit this Reply Memorandum of Law in further support of their Motion to Dismiss the Complaint in its entirety for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

On the pretense that this is a garden variety nursing home claim, Plaintiff would have this Court ignore the plain language of the PREP Act, the Department of Health and Human Service's Declaration of COVID-19 as a public health emergency, and OLOC's protocols and actions in response to this emergency, which involved the administration of covered countermeasures to treat this patient's COVID-19 and prevent its spread to others. To accept Plaintiff's argument would be to read out of the PREP Act the immunity it confers on providers such as OLOC not only from liability, but also from suit, under federal law. To accept Plaintiff's argument would frustrate clear Congressional intent to protect providers from having to defend in protracted litigation the care they provide in good faith to combat a public health emergency – and, in the case of COVID-19, at great cost and personal risk to themselves and their families. We urge the Court to recognize this case for what it really is, and dismiss it accordingly pursuant to the PREP Act.

The New York EDTPA compels the same result. The Complaint herein plainly alleges harm due to acts and omissions that occurred "in the course of … providing health care services" to the patient relating to the "prevention or treatment of COVID-19." N.Y. Pub. Health Law §§ 3081; 3082(1). The EDTPA was enacted to broadly protect healthcare facilities and workers from

1

liability that may result from circumstances associated with this unprecedented public health crisis, and the recent repeal of the EDTPA does not change this result.  The plain language of this repeal, and the enunciated intent of the legislators prior to its passage, reveal that it was not meant to apply retroactively.  The repeal of the EDTPA applies prospectively and does not impact the liability protections afforded OLOC for the care rendered in this case.  Therefore, the EDTPA also bars Plaintiff's claims.

Accordingly, OLOC respectfully asks this Court to dismiss this action, thereby giving full force and effect to the broad legal immunities Congress and the New York State Legislature conferred on providers battling this unprecedented public health emergency of historic magnitude.

## ARGUMENT

### I.      THE PREP ACT BARS PLAINTIFF'S CLAIMS

#### *The Complaint Alleges a Claim Under the PREP Act*

The PREP Act is invoked when there is an allegation of a claim for loss "caused by, arising out of, ***relating to***, or resulting from ***the administration*** to or the use by an individual of a covered countermeasure" to prevent, mitigate or treat COVID-19.  42 U.S.C.A. § 247d-6d(a)(1) (emphasis added).  Covered countermeasures include "[a]ny drug, device, or biological product that is approved, cleared, or licensed by the FDA and is used to diagnose, mitigate, prevent, treat, cure, or limit the harm of COVID-19…."[1]  This includes drugs and devices to treat COVID-19 and to prevent its spread to others, including, for example, personal protective equipment ("PPE") and hand sanitizer.[2]

---

[1] Advisory Opinion on the Public Readiness and Emergency Preparedness Act and the March 10, 2020 Declaration under the Act, p. 3, https://www.hhs.gov/sites/default/files/prep-act-advisory-opinion-hhs-ogc.pdf (May 19, 2020) ("Advisory Opinion").

[2] https://www.fda.gov/medical-devices/coronavirus-disease-2019-covid-19-emergency-use-authorizations-medical-devices/personal-protective-equipment-euas (PPE);
https://www.fda.gov/media/136289/download; https://www.fda.gov/media/136118/download (hand sanitizer).

In this case, the Complaint, coupled with the patient's medical records and OLOC's protocols, clearly establish that Plaintiff's claims relate to OLOC's alleged failure to adequately administer covered countermeasures to effectively curb the spread of COVID-19 within its facility – claims covered by the PREP Act.  OLOC actively administered covered countermeasures to prevent the spread of COVID-19, including the use of PPE and proper hand hygiene protocols, as evidenced from the Droplet Precaution protocol put in place for patients with suspected COVID-19 infections.  (*See*, Exhibit "C", at. PDF p. 435).  The allegations in the Amended Complaint directly implicate these protocols, in addition to OLOC's decisions and actions regarding its administration of covered countermeasures to both treat the patient herein and prevent the spread of COVID-19 to others.

The PREP Act Declaration expressly states that "liability claims are precluded [under the PREP Act] … if the claims are due to … ***management and operation of countermeasure programs at distribution and dispensing*** sites."[3]  Plaintiff alleges just such claims in this case. The Amended Complaint alleges that OLOC's negligent maintenance of its system for preventing and controlling COVID and other infections led to the death of the patient from COVID-19 and also references past failures to allegedly implement contact isolation protocols and ensure sufficient use of PPE, including gloves, masks, gowns, respirators and eye protection -- all covered countermeasures under the PREP Act.  (Complaint, at ¶¶ 1-3, 52, 57).  Plaintiff challenges the affirmative decisions made by OLOC to combat COVID-19, and she alleges injury relating to OLOC's management and operation of the countermeasure programs at its facility.  Thus, Plaintiff pleads a "claim for loss…***relating to***…***the administration***…of a covered countermeasure"

---

[3] Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, Sec. IX, 85 FR 15198-01 (March 10, 2020) ("Declaration" or "COVID-19 Declaration").

pursuant to the PREP Act, thereby bringing her state law claims with its scope.  42 U.S.C.A. § 247d-6d(a)(1) (emphasis added).

From the start of the pandemic, HHS has repeatedly stated that "Administration" includes not only the physical provision of a covered countermeasure, but also extends to "activities related to management and operation of programs and locations for providing counter-measures to recipients." (Declaration, sec. IX).  Indeed, the PREP Act extends to "to anything 'relating to' the administration of a covered countermeasure."[4]  This includes *decisions* related to the use and management of covered countermeasures, including PPE, to prevent community-based transmission of COVID-19 to others.[5]  As the Central District of California found in *Garcia v. Welltower OpCo Grp. LLC*, No. SACV2002250JVSKESX, 2021 WL 492581, at *1 (C.D. Cal. Feb. 10, 2021), allegations regarding a facility's failure to implement appropriate infection control measures to prevent the spread of COVID-19 is expressly covered by the PREP Act.

The Declaration plainly states that liability claims relating to such decision-making are precluded by the PREP Act.  There is no requirement that a covered countermeasure directly cause the injury alleged.  The scope of immunity is broad, covering claims for loss not only "caused by" and "resulting from" a countermeasure, but also injuries "relating to" a countermeasure.  42 U.S.C.A. § 247d-6d(a)(1).  The Second Circuit has found that the terms "relating to" and "arising out of" are inherently and intentionally more expansive than "resulting from."  *In re WTC Disaster Site*, 414 F.3d 352 (2d Cir. 2005) (addressing analogous language in the federal Air Transportation

---

[4] *See* Advisory Opinion 21-01 on the Public Readiness and Emergency Preparedness Act Scope of Preemption Provision, p. 3, https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/2101081078-jo-advisory-opinion-prep-act-complete-preemption-01-08-2021-final-hhs-web.pdf (January 8, 2021) ("Advisory Opinion 21-01").

[5]*See* Advisory Opinion 20-04 on the Public Readiness and Emergency Preparedness Act and the Secretary's Declaration under the Act (October 23, 2020), p.1. https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/AO%204.2_Updated_FINAL_SIGNED_10.23.20.pdf. ("Advisory Opinion 20-04").
.

Safety and System Stabilization Act of 2001, which, like the PREP Act, established a compensation fund and federal cause of action, and completely preempted Plaintiffs' state law claims); *Aviation Fin. Co. v. Chaput*, No. 14 CIV. 8313 (CM), 2015 WL 13203653, at *11 (S.D.N.Y. Mar. 12, 2015) (discussing "classically broad" terms "arising out of or relating to" in arbitration clause of agreement as applying to allegations that "touch matters" covered by the agreement).

The ordinary meaning of "related to" is especially broad —"to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." Black's Law Dictionary 1158 (5th ed. 1979). The Fifth Advisory Opinion to the PREP Act discusses the "relating to" language, emphasizing that "the plain language of the PREP Act … extends immunity to anything 'relating to' the administration of a covered countermeasures."[6] The Fourth Advisory Opinion also confirms that PREP Act immunity broadly extends to a covered person's conduct ***relating to*** the administration or use of covered countermeasures.[7]

In sum, since the allegations in the Amended Complaint relate to OLOC's management and operation of covered countermeasure and infection control programs to prevent, mitigate and treat COVID-19, the PREP Act applies to Plaintiff's claims. As such, the PREP Act completely preempts Plaintiff's state law claims, warranting dismissal of the Complaint.

The Western District of Louisiana agrees that the PREP Act is a complete preemption statute for claims falling within its scope, based on the Act's: (1) civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) specific jurisdictional grant to the federal courts for enforcement of the right; and (3) clear Congressional

---

[6] *See* Advisory Opinion 21-01, p. 3.

[7] *See* Advisory Opinion 20-04, p.2.

intent that claims brought under the federal law be exclusive. *Rachal v. Natchitoches Nursing &*
*Rehabilitation Center LLC, et al.*, No. 1:21-CV-00334, fn. 3 (W.D. La. Apr. 30, 2021), attached
hereto as **Exhibit "A"**.

The *Rachal* court compared the PREP Act to the Air Transportation Safety and System
Stabilization Act of 2001 ("ATSSSA"), which was passed in the wake of the September 11, 2001
terrorist attacks.  *See* Pub. L. No. 107-42, 115 Stat. 230 (2001) (codified at 49 U.S.C. § 40101).
The Second Circuit found that the ATSSSA, which has language and a remedial scheme similar
to the PREP Act, was a complete preemption statute based on its: (i) creation of a Victim
Compensation <u>Fund</u> to provide relief, without litigation, to individuals (or relatives of deceased
individuals) physically injured or killed as a result of the September 11th attacks; (ii) <u>immunity</u> to
the airlines; (iii) a <u>federal cause of action</u> as the exclusive judicial remedy for damages arising out
of the attacks; and (iv) an <u>exclusive venue</u> in the United States District Court for the Southern
District of New York for all suits brought pursuant to the federal cause of action.  *In re WTC*
*Disaster Site*, 414 F.3d 352 (2d Cir. 2005).  As such, the *Rachal* court concluded:

> [s]ignificantly, the composition of the PREP Act is very similar in that it:
> (i) creates a Covered Countermeasure Process Fund to provide relief,
> without litigation, to eligible individuals for "covered injuries" directly
> caused by the administration or use of a "covered countermeasure;" (ii)
> provides immunity to "covered persons," except in the case of "willful
> misconduct;" (iii) creates an exclusive federal cause of action for damages
> against a covered person for willful misconduct; and (iv) provides that the
> federal court in the District of Columbia is the exclusive federal venue for
> suits on the federal cause of action. 42 U.S.C. § 247d-6(d); 42 U.S.C. §
> 247d-6(e).

No. 1:21-CV-00334, fn. 3.  The court also recognized that the remedy available under the Fund
"shall be exclusive of any other civil action or proceeding for any claim or suit this section
encompasses," with the exception of the federal cause of action for willful misconduct. *Id.* § 247d-
6(d).  Taken together, the court concluded, these provisions "demonstrate Congress's intent that

the PREP Act exclusively encompass 'claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure.'" *Rachal*, No. 1:21-CV-00334, fn. 3, *citing* § 247d-6d(a)(1).[8]

Thus, despite Plaintiff's attempts to avoid preemption by styling her claims as state law claims, any application of the PREP Act to the Complaint and the patient's medical records compel the conclusion that these claims arise under federal law.  Therefore, dismissal is warranted under Fed. R.Civ. P. 12(b)(1) and 12(b)(6).

## II.    THE EDTPA BARS PLAINTIFF'S CLAIMS

### A.    *The Repeal of the EDTPA Is Not Retroactive*

Plaintiff misrepresents the nature and effect of the recent repeal of the EDTPA and boldly misstates, through the Affidavit of Assembly Member Ron Kim, that the intent of the law was to "repeal the [EDTPA] retroactively as of March 7, 2020."  (*See* Affidavit of Assembly Member Ron Kim, ¶ 6, attached to Plaintiff's Opposition as Exhibit "E").  This is wholly untrue.  First, the language of the repeal is clear. It states:

> Section 1. Article 30-d of the public health law is REPEALED.
> § 2. This act shall take effect immediately."[9]

[Emphasis added].  When a statute includes the phrase "effective immediately", "'it does not have any retroactive operation or effect.'"  *Morales v. Gross*, 230 A.D.2d 7, 10 (2nd Dept. 1997) (quotation omitted); *see also Moynihan v. New York State Employees' Ret. Sys.,* 192 A.D.2d 913,

---

[8] OLOC respectfully submits that recent rulings to the contrary in *Shapnik v. The Hebrew Home for the Aged at Riverdale,* No. 20-CV-6774 (LJL), 2021 WL 1614818, at *16 (S.D.N.Y. Apr. 26, 2021), *Dupervil v. All. Health Operations, LCC*, No. 20CV4042PKCPK, 2021 WL 355137, at *12 (E.D.N.Y. Feb. 2, 2021), and *Garcia v. New York City Health & Hosps. Corp.,* No. 20 CIV. 9970 (CM), 2021 WL 1317178, at *1 (S.D.N.Y. Apr. 8, 2021) were wrongly decided since the courts in those cases did not giving proper deference to HHS' interpretation of the PREP Act and erroneously concluded that the PREP Act's federal remedy was insufficient to accord it complete preemptive treatment.

[9] https://www.nysenate.gov/legislation/bills/2021/s5177.

914 (3ʳᵈ Dept. 1993) ("the amendment recites that it shall take effect immediately, which language this court has held provides a clear indication that prospective application is appropriate.")

Moreover, when a statute is framed in future words such as "shall", it is construed as prospective only. *Kuryak v. Adamczyk*, 265 A.D.2d 796, 796 (4ᵗʰ Dept. 1999); *Weiler v. Dry Dock Sav. Inst.*, 258 A.D. 581, 582 (1ˢᵗ Dept. 1940), *aff'd* 284 N.Y. 630 (1940), ("[a] statute using words importing futurity, such as 'shall be,' is regarded as prospective only."); *Dalziel v. Rosenfeld*, 265 N.Y. 76, 79 (1934) ("words importing futurity as unmistakably as 'shall be' or as 'shall hereafter'" are clear expressions of prospective application) (internal citation omitted).

The inquiry should end here since "[a] general rule of construction is that statutes 'are to be construed as prospective only, unless a clear expression of intent to the contrary is found.'" *Mulligan v. Murphy*, 14 N.Y.2d 223, 226 (1964) (quotation omitted). Indeed, retroactive operation is not favored by courts, and statutes will not be given such construction unless the language expressly or by necessary implication requires it. *Kuryak*, 265 A.D.2d at 796. As the Supreme Court held in *Landgraf v. USI Film Prod.*, 511 U.S. 244, 265 (1994):

> the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted. For that reason, the "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal."

*Id.* at 265 (quotation omitted).

Nonetheless, if this Court has any doubt as to the plain meaning and effect of the repeal, the legislative history provides further evidence that it was not meant to apply retroactively. "It

takes a clear expression of the legislative purpose to justify a retroactive application." *Jacobus v. Colgate*, 217 N.Y. 235, 240 (1916).  That is wholly absent in this case.

Attached hereto as **Exhibit "B"** is the transcript from the New York State Assembly session on March 4, 2021, where the bill was discussed.  This dialogue clearly evinces the intent and understanding of the Assembly, <u>prior to voting</u>, that the repeal was to be applied prospectively.

> <u>Mr. Byrne</u>: [M]y understanding is this proposal does not have any sort of retroactive effect to increase that liability.  (*See* p. 45).  [I]t is with the belief and understanding that this bill is being applied prospectively, not retrospectively, that I will be voting in the affirmative.  (*See* p. 82).

> <u>Mr. Goodell</u>:  A lot of questions have been asked whether those protections are being lifted retroactively.  I don't think they should.  I think there's very, very serious constitutional due process issues if you try to impose retroactive liability.  And I'm confident … that the courts will apply this prospectively, as they should.  So with that clear understanding and the legislative history … I will be supporting it and urge my colleagues to do the same.  (*See* p. 60).

> <u>Ms. Woerner</u>:  So I'll be supporting this bill today because we should always hold bad actors accountable.  And it is my hope that this is applied prospectively and not retroactively because of the environment in which our nursing home administrators had to deal.  (*See* p. 65).

> <u>Mr. Lavine</u>:  So on the question of retroactivity, it is my intent that there should be no retro – retroactive removal of those protections that were granted in the March 23rd Executive Order.  And I just want to make that clear.  (*See* p. 73).

> <u>Ms. Fahy</u>:  My understanding as well is that this was not retroactive, it was prospective.  And again, I just want to be on the record saying that my understanding is that this is prospective.  (*See* p. 86).

> <u>Ms. Griffin</u>:  I am proud to ***co-sponsor this bill with the understanding that it is prospective***.  I don't believe nursing home operators that ran facilities as efficiently, safely and compassionately as they could at an extremely challenging time should be held accountable retroactively.  (*See* p. 93) (emphasis added).

Statements made by members of the Committee on Health, including its Chair, Richard Gottfried, are also unequivocal on this issue:

Mr. Gottfried:  It is highly unusual for a law to be applied retroactively. **When the Legislature wants a law to be – to have retroactive effect, we know how to do that**.  We put in special language that makes it crystal clear like, this act shall take effect immediately and shall be deemed to have been in full force and effect since whenever.  **There's none of that language here.  So we don't have to worry about this being applied retroactively**.  (*See* p. 90) (emphasis added);

Mr. McDonald:  We had the Health Committee meeting the other day.  The answer was very clear, is this bill retroactive.  The answer was very clear: No, it's not.  It wasn't really a question, it was pretty much straightforward.

[W]hen I look at the bill, the bill is probably the simplest bill we'll ever see.  You know, this is – this is a new bill, it's effective immediately upon passage, and I don't see anything about retroactivity in this.  (*See* p. 66-67).

Assembly Member Burdick cogently summarized the "dialogue regarding what the intent is."  He stated:

I … want to thank Chair Gottfried for his explanation that for the law to be retroactive, the Legislature would have explicitly stated that it's retroactive.  There's no such language that exists in this legislation.  **It is the clear intent of this Body that it be prospective**.  I am thoroughly satisfied that that would be how it will be treated.

(*See* p. 92) (emphasis added).  Thus, there is no dispute regarding the intent of the legislature.[10]

The repeal of the EDTPA was intended to apply prospectively.

Mr. Kim misrepresents this intent in his Affidavit when he states: "the Bill was intended to retroactively repeal the unfair immunity law" and the "retroactive intent of the subject Bill was made known to the entire voting body during the Assembly Floor Debate on March 4, 2021, prior to the Assembly vote."  (*See* Affidavit of Mr. Kim, ¶¶ 6-7).  Although Mr. Kim may have **desired** that the repeal be applied retroactively, he repeatedly stated that the bill was meant to "return to the status quo" and that the issue of retroactivity "has to be determined in court because it is not

---

[10] The comments from New York State Senate members prior to their vote on the Bill further supports this intent. Senator Mayer explained: "I want to thank Senator Biaggi for her really persistent leadership on this issue.  And I want to clarify that my understanding is that this bill is prospective, it will apply going forward."  (*See* New York State Senate Transcript, pp. 1834-38, attached hereto as **Exhibit "C"**).

<u>stated in writing in this particular piece of legislation</u>." (*See* **Exhibit "B"**, pp. 42, 49) (emphasis added). Moreover, nowhere in the Assembly Memorandum in Support of the Legislation is there any indication that the Legislature intended for the repeal to be applied retroactively.

Even as sponsor of the bill, Mr. Kim's wish that it be given retroactive effect is irrelevant and inconsistent with basic legislative principles. Legislative purpose is to be found in the language of the bill, rather than in the ideas expressed in debate by the introducer of the bill. *In re Morse*, 247 N.Y. 290, 302–03, 160 N.E. 374 (1928). The views expressed by Mr. Kim in his Affidavit are particularly irrelevant and not at all probative on this issue since "[p]ost-enactment statements of a member of the Legislature, even one who sponsored the law in question, are irrelevant as to the law's meaning and intent." *McKechnie v. Ortiz*, 132 A.D.2d 472, 475 (1st Dept. 1987), *aff'd*, 72 N.Y.2d 969 (1988). *See also In re Delmar Box Co.*, 309 N.Y. 60, 67 (1955) (views expressed by assemblyman who introduced bill cannot serve as reliable index to intention of legislators who passed the bill); *Schrader v. Carney*, 180 A.D.2d 200, 207 (4th Dept. 1992) (an expression of intent by one sponsor of a bill after its passage is not a reliable index of the intention of the legislators who passed the bill). Thus, Mr. Kim's singular intent, at odds with the legislature as a whole, cannot be of "paramount consideration" and should not be considered by this Court. (*See* Plaintiff's Opposition at p. 22).[11]

In sum, New York legislators voted to repeal the EDTPA based on their clear understanding that the repeal would apply prospectively and not impact the liability protections

---

[11] There is also no merit to plaintiff's argument that the bill is remedial in nature and should, therefore, be given retroactive effect. Remedial legislation involves changes of procedure that do not create a right of action. Here, the repeal of the EDTPA affords a remedy to those allegedly injured in connection with the prevention or treatment of COVID-19 that did not previously exist. To supply a remedy where previously there was none of any kind is to create a right of action. *Jacobus v. Colgate*, 217 N.Y. 235 (1916). Therefore, the repeal of the EDTPA does not constitute remedial legislation. Moreover, even the classification of a statute as "remedial" does not overcome the strong presumption against retroactivity without a "'clear' expression of legislative intent to apply a statute retroactively." *9CFCU Cmty. Credit Union v. Hayward*, 552 F.3d 253, 262 (2d Cir. 2009). This does not exist here.

afforded healthcare providers such as OLOC during the height of the COVID-19 pandemic.  The plain language of the bill is unequivocal in this regard.  As such, the protections of the EDTPA apply herein and bar Plaintiff's claims.

**B.     The EDTPA Applies to Plaintiff's Claims**

OLOC has demonstrated that the liability protections of the EDTPA apply to Plaintiff's claims.  The EDTPA "applies broadly" and provides immunity "for any harm or damages alleged to have been sustained as a result of an act or omission" … "that relate[s] to the diagnosis, prevention or treatment of COVID-19."  N.Y. Pub. Health Law §§ 3080, 3081(5), 3082(1).  The Amended Complaint clearly alleges injury resulting from OLOC's alleged failure "to take proper precautions to help prevent the development of infections", and that its failure to "maintain a system for preventing, identifying…and controlling infections" led to the death of the patient from COVID-19.  (*See* Amended Complaint, at ¶¶ 1, 4).  Thus, Plaintiff has expressly invoked the EDTPA by claiming injury as a result of OLOC's alleged omissions in preventing the spread of COVID-19 within its facility.

Also, contrary to Plaintiff's assertions, OLOC has satisfied the statutory requirements of the EDTPA.  At the time of Plaintiff's alleged injuries, OLOC was providing health care services to the patient: (1) pursuant to a COVID-19 emergency rule;[12] (2) during a time when the patient's treatment was undoubtedly impacted by OLOC's decisions and activities as a result of the COVID-19 outbreak, given the patient's positive diagnosis and treatment for COVID-19, as well as the protocols put in place by OLOC to prevent the spread of COVID-19 to others; (3) in support of

---

[12]New York Executive Order No. 202: "Declaring a Disaster Emergency in the State of New York" (Mar. 7, 2020), https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO_202.pdf

the state's directives "to protect the health and safety of … patients" (*id.*); and (4) in good faith. Thus, the EDTPA applies and bars Plaintiff's claims.

False representations regarding the May 11, 2020 New York State Department of Health ("DOH") investigation into OLOC's response to COVID-19 certainly does not change this result. Plaintiff misstates the true nature and findings of this investigation, which focused not on infection control procedures, but on OLOC's response, during a limited time period, to the Executive Order requirements that facilities communicate COVID-19 positive cases and deaths to the families and representatives of its residents. The May 11, 2020 "Complaint Survey", which contains the factual details of this investigation is attached hereto as **Exhibit "D"**.[13] As explained in the "Citation Details", OLOC "did not comply with New York State Executive Order (EO) 202.18 and did not ensure that all residents and/or their next of kin were notified of either a single confirmed infection of COVID-19 or COVID-19 death within 24 hours from the date of occurrence between 4/19/20 to 4/24/20." In response, OLOC's administrator explained:

> the notification process to all families/next of kin did not begin until 4/24/2020 because the facility was waiting for further guidance on the Executive Order 202.18. He stated as of 4/24/2020 the facility put in place an Email notification system. The Administrator alleged that the Executive Order was not clear initially and he interpreted it as an order to notify only affected families of individual health status as it related to COVID19. He stated calls were made to individual affected families regarding health status between 4/19/2020 and 4/24/2020.

(*Id.*).

The Plan of Correction confirms that: (1) "[t]here were no residents/patients identified to be affected due to the delay in notification"; (2) OLOC established an email notification system and phone line to enable the facility to communicate to designated representatives regarding any

---

[13] This document is publicly available at: https://profiles.health.ny.gov/nursing_home/poc_inspection_detail/R5G8.

resident/patient that tests positive for COVID-19 or suffers a COVID-19 related death; and (3) OLOC's resident demographics are reviewed daily to identify any new COVID-19 cases or deaths, which require notification.  The Plan of Correction also discusses plans for the review of these procedures.  Contrary to Plaintiff's assertions, this investigation did not uncover "various failures and violations committed by Defendants in response to the COVID-19 pandemic." (*See* Plaintiff's Opposition, at p. 3).  In fact, there were no other citations issued to OLOC in connection with its response to COVID-19.[14]

As the patient's medical records demonstrate, OLOC took affirmative measures to manage COVID-19 cases at its facility generally, and for the patient specifically, by: suspending all visitors on March 12, 2020 to prevent the spread of the virus; closing the patient's unit when others began to experience respiratory symptoms suspicious for COVID-19; implement infection prevention and control protocols involving patient isolation, social distancing and PPE compliance; regularly monitoring the patient's temperature, respiratory symptoms and oxygen levels, and administering medication and supplemental oxygen as needed; and transferring the patient to the hospital when her COVID-19 symptoms worsened.  (OLOC's Motion to Dismiss, Exhibit "C", Resident Progress Notes, pp. 4-9, PDF p. 435).  Thus, the facts herein are clearly distinguishable from *Brady v. SSC Westchester Operating Company LLC,* upon which Plaintiff relies.

### C.   *Plaintiff's Claims May Not Be Predicated on Pre-COVID Conduct*

Plaintiff cannot avoid application of the EDTPA by arguing that her claims are predicated on alleged negligence occurring ***prior*** to the COVID-19 pandemic and the EDTPA's enactment. In New York, "a tort cause of action cannot accrue until an injury is sustained." *Kronos, Inc. v. AVX Corp*., 81 N.Y.2d 90, 94 (1993).  The date of injury, as opposed to the allegedly wrongful

---

[14] *See* https://profiles.health.ny.gov/nursing_home/view/150576#inspections.

conduct, is the relevant date for marking accrual. Thus, a cause of action cannot be predicated on conduct occurring prior to a claimant's injury, and Plaintiff cannot avoid application of the EDTPA by arguing that "negligent acts and omissions by the Defendant nursing home occurred prior to the pandemic and prior to the enactment of immunity under the EDTPA." (Plaintiff's Opposition, at p. 29). The patient herein allegedly sustained injury when she contracted COVID-19, <u>after the effective date of the EDTPA</u>. Thus, Plaintiff's claims accrued after the EDTPA was in full force and effect and are, therefore, barred by the immunity provisions therein.

New York courts have consistently held that injury/damages are a necessary element of a tort action and a cause of action is not cognizable until damages are sustained. *Bonded Waterproofing Servs., Inc. v. Anderson-Bernard Agency, Inc.,* 86 A.D.3d 527, 530 (2nd Dept. 2011). Regardless of whether the underlying cause of action sounds in negligence or medical malpractice, a cause of action for personal injuries accrues "when all elements of the tort can be truthfully alleged in a complaint." *Barrell v. Glen Oaks Vill. Owners, Inc.*, 29 A.D.3d 612, 613 (2nd Dept. 2006) (plaintiffs' claim against defendant plumbing company for negligent installation of the washing machine and attendant plumbing accrued on the date the injury was sustained, and not on the date the work was performed); *LaBello v. Albany Med. Ctr. Hosp.,* 85 N.Y.2d 701, 703 (1995) (infant's medical malpractice action, premised on alleged injurious acts or omission occurring prior to birth, did not accrue until infant's birth); *City Store Gates Mfg. Corp. v. Empire Rolling Steel Gates Corp.,* 113 A.D.3d 718, 719 (2nd Dept. 2014) (tort claims accrue upon an injury being sustained, not upon defendant's wrongful act or plaintiff's discovery of injury). Therefore, pre-EDTPA conduct cannot form the basis for Plaintiff's claims since her causes of action were not cognizable until the patient contracted COVID-19.

### D.    *Plaintiff's Allegations of Gross Negligence Do Not Preclude Dismissal*

Plaintiff contends that boilerplate language in her Amended Complaint -- that OLOC "acted in so careless a manner as to show complete disregard for the rights and safety of others" (*see* Amended Complaint, ¶¶ 136-153) -- saves this action from dismissal under the EDTPA by virtue of its exception for gross negligence.  However, the Complaint does not allege any <u>specific conduct</u> directed at the patient or by which she was impacted that amounts to willful misconduct or that was in reckless disregard for the patient's rights or safety.

Gross negligence requires a showing of "conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." *Estiverne v Esernio-Jenssen*, 910 F. Supp.2d 434, 445 (E.D.N.Y. 2012) (*quoting Colnaghi, USA. v. Jewelers Protection Servs., Ltd.*, 81 N.Y.2d 821, 823–24 (1993)). Conclusory assertions "unsupported by any factual allegations …[are] insufficient to state a cause of action alleging gross negligence." *Mancuso v. Rubin*, 52 A.D.3d 580, 583 (2nd Dept. 2008).  *See also Amadsau v. Bronx Lebanon Hosp. Ctr.,* No. 03 CIV.6450 LAK AJP, 2005 WL 121746, at \*13 (S.D.N.Y. Jan. 21, 2005), *report and recommendation adopted sub nom. Amadasu v. Rosenberg*, No. 03CIV.6450LAK, 2005 WL 954916 (S.D.N.Y. Apr. 26, 2005), *aff'd,* 225 F. App'x 32 (2nd Cir. 2007) (dismissing gross negligence claim based merely on conclusory allegations); *Sutton Park Dev. Corp. Trading Co. Inc. v. Guerin & Guerin Agency Inc.,* 297 A.D.2d 430, 431 (3rd Dept. 2002) (similar).

Plaintiff argues in opposition that OLOC: "acted in so careless a manner"; "acted in so reckless a manner"; and exhibited conducted that was "willful" and "in reckless disregard" <u>without providing a single detail of the acts and conduct complained of</u>.  (Plaintiff's Opposition, at p. 33). The Amended Complaint provides absolutely no facts to support any claim that OLOC's conduct was outrageous, or otherwise aggravated beyond mere negligence or that OLOC acted wantonly

or maliciously toward the patient.  Therefore, Plaintiff does not plead an exception to immunity under the EDTPA and, accordingly, this action is subject to dismissal.[15]

## **CONCLUSION**

OLOC urges this Court to adopt the clear intent of Congress and the New York State Legislature to protect health care providers from having to defend in protracted litigation the care they provide in good faith to combat a public health emergency – and, in the case of COVID-19, at great cost and risk to themselves.  The policy behind both the PREP Act and the EDTPA is to eliminate legal uncertainty and cost in having to defend against claims that arose in the context of care provided during a public health crisis, when front-line workers faced the threat of scarce resources including lack of the equipment needed to protect themselves from contagion, and when medical professionals had to make split-second life-or-death decisions.

Accordingly, OLOC respectfully asks this Court to dismiss this action, thereby giving full force and effect to the broad legal immunities intended to protect providers battling a public health emergency of historic magnitude.

---

[15] Any purported claim for gross negligence is also preempted by the PREP Act since a claim for willful misconduct under the PREP Act may only be brought as a federal cause of action in the United States District Court for the District of Columbia after a claimant seeks relief pursuant to the Fund.  *See* 42 U.S.C. § 247d-6d(c)(d)(e).

**WHEREFORE**, for the foregoing reasons, Defendants OUR LADY OF CONSOLATION GERIATRIC CARE CENTER, OUR LADY OF CONSOLATION GERIATRIC CARE CENTER d/b/a OUR LADY OF CONSOLATION NURSING AND REHABILITATIVE CARE CENTER and OUR LADY OF CONSOLATION NURSING AND REHABILITATIVE CARE CENTER respectfully request that the Amended Complaint against them be dismissed with prejudice, along with such other and further relief as this Court deems just and proper.

Dated:  Garden City, New York
        June 4, 2021

                                      Respectfully submitted,


                                      **VIGORITO, BARKER, PATTERSON,**
                                      **NICHOLS & PORTER, LLP**

                                      *Megan A. Lawless*
                                      Megan A. Lawless, Esq. (ML 3227)
                                      Dylan Braverman, Esq. (DB 5501)
                                      Charles Faillace, Esq. (CF 4001)
                                      *Attorneys for Defendants*
                                      300 Garden City Plaza, Suite 308
                                      Garden City, New York 11530
                                      (516) 282-3355
                                      m.lawless@vbpnplaw.com

18